[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Imogene E. Christensen, a 70-year old woman, was convicted of domestic violence by the Municipal Court of Xenia, Greene County, Ohio, following her plea of no contest. Her appeal raises the single issue of whether the trial court abused its discretion in refusing to remit the forfeiture of a $10,000 cash bond.
The circumstances of Christensen's arrest for domestic violence are set forth in the following report by one of the two arresting officers from the Bellbrook Police Department:
 A home care worker called Bellbrook Police to relate that she was in fear that the above complainant was being harmed by the suspect. Bellbrook Police Officers Sgt. Bretcher and Officer Jones responded to the home and found that the suspect had caused her husband harm. Upon arrival of this Officer along with Officer Bahnsen, it was found that Mrs. Christenson had shoved her husband and threw a phone at him. Around three to four months ago she attempted to cause him harm with a knife. She was so intoxicated that she fell to the floor 3 times in front of Sgt. Bretcher. A written statement was obtained signed by the complainant and he was provided a copy of the domestic violence paperwork. He does feel that she will cause him harm when she returns.
Docket 1.
Christensen was taken into custody late on the night of January 14, 1998. She was taken to the Xenia Police Department where she posted a cash bond of $10,000 by use of a credit card and was released in the early morning hours of January 15, 1998. Ms. Christensen was given a misdemeanor citation for domestic violence which summoned her to appear in Xenia Municipal Court for her arraignment at 8:30 a.m. on January 14, 1998 (an obvious error). What followed next is best described by the court itself in its judgment entry of April 15, 1998, refusing Christensen's request, through counsel, for a return to her of the $10,000 cash bond which the court had ordered forfeited, as follows:
 Defendant bonded out in the early morning hours of January 15, 1998, as indicated by Counsel for the Defense. At the time she bonded out, Defendant was told that she needed to be in court at 8:30 the next morning.
 Instead, the Defendant went to her home and consumed large amounts of alcoholic beverages.
 All of this was discussed with the Defendant at a hearing on January 15, 1998, after she was arrested by the Court's bailiffs for failure to appear. Undoubtedly, she cannot remember this, as the Court was unable to have any coherent conversation with the Defendant due to the fact that she was extremely intoxicated.
 The Court then placed her in jail on a $250,000 bond, because the Court felt that the Defendant, who the Court had prior dealings with and who had already indicated a complete lack of concern about any court procedures or requirements, had available to her sufficient monies to post that bond, and was a significant threat for failure to appear and failure to follow court orders. The Court was also unable to obtain a time waiver from her or any coherent indication from her as to how she wanted to proceed.
 Due to the fact that the Defendant consumed a massive amount of alcohol and was uncooperative, she had to be transported from the Greene County Jail to Greene Memorial Hospital. Initially, there was some concern that the Defendant had suffered some kind of a heart attack or similar event. As it turns out, however, the Defendant was so intoxicated that she caused herself a health problem. In the meantime, she continued to be uncooperative and a sheriff's deputy was posted at Greene Memorial Hospital as the Court did not feel safe releasing the Defendant. Of significant concern in this case was the fact that the Defendant appeared to be, according to the allegations in the paperwork and according to the Defendant's own statements at the attempt to arraign her, extremely irritated with her husband, a wheelchair-bound person who was left alone and at her mercies at the marital residence. Her irritation appeared to activate her desire to drink and her lack of concern about the consequences. It was not felt that the Defendant would remain at the hospital without being guarded by a deputy sheriff.
 After several days, the Court was apprised that Mr. Christensen, Defendant's husband, had left the home and moved out of state. The Court therefore felt, due to the expense of the constant guard on the Defendant and the fact that the apparent major irritant to her had been removed, the bond should be reduced to an OR bond. That was then accomplished.
 During the course of attempting to get control of Ms. Christensen, or have her get control of herself, the Court received various communications from her adult children, successful professionals in other states. Both indicated a history of this kind of behavior, a history of abuse of family members, most recently including Ms. Christensen's wheelchair-bound husband, and a total lack of concern on the part of Imogene Christensen. The Court also received sufficient information that it felt that Ms. Christensen was unwilling to admit her alcoholism or her past errors or transgressions. The Court also felt it was very clear, as had already been shown by Ms. Christensen, that she was completely unwilling to follow any direction from the Court.
 The bond in this case is forfeited and will remain forfeited.
The transcript of the January 15, 1998 hearing begins with the following statement by the court:
 THE COURT: Miss [sic] Christensen bonded out of jail last night and failed to appear this morning. We became concerned about her condition. In light of the report, here, two court staff members went to her residence. Miss Christensen is intoxicated. This obviously occurred after she bonded out and it continues to occur. We are concerned for her safety.
Shortly thereafter, the following exchange between the court and Christensen appears:
THE DEFENDANT: Now, what do you want?
 THE COURT: I want you to get inpatient treatment right now.
THE DEFENDANT: No.
 THE COURT: Okay. Well, I'm putting you in jail, then, and your bond is going to be a lot higher, okay.
THE DEFENDANT: Okay. I paid $10,000 last night.
 THE COURT: Yeah, and you were supposed to come in this morning.
 THE DEFENDANT: They told me the 21st. I called, and they said to come in on the 21st.
 THE COURT: Okay. Well, listen to me. In your condition, doing what you are doing to yourself, I can't even trust you to come in on the 21st. Do you understand? Okay. I don't want to get you upset, but your bond is going to go up, and it's going to be a lot higher because I don't think you care about too much of anything right now.
The hearing then ends as follows:
 THE DEFENDANT: And I've got to sell all the cars and all the — — shoot.
THE COURT: Listen to me, listen to me.
THE DEFENDANT: Okay.
THE COURT: Here is what I want you to do.
 THE DEFENDANT: I'm going to listen. I'm going to listen. You tell me what the hell I should do.
 THE COURT: I'm going to work on that, but I can't talk to you right now because you've been drinking and it's not going to help, all right. We are going to send you some paperwork on the bond. I'm going to put you in jail. If Sue Gillum can get you in treatment, we are going to do that. But I'm not going to let you go home.
THE DEFENDANT: No, no, no, no, no. Trust me.
The communications from Christensen's children were letters that were faxed to the court on that day and are part of the record before us. The faxes from the two daughters are very revealing and undoubtedly influenced the judgment of the court. One daughter wrote, in part, as follows:
 I am the daughter of Julien and Imogene Christensen of 5950 Little Sugar Creek Road. As you know, my mother was arrested last night for spousal abuse. I am extremely worried that if she is released again that my father will be in grave, grave danger. I beg
you not to let her return to the house.
 My mother has a 20 — 25 year history of alcohol and drug abuse. She has been through 30-day inpatient alcohol treatment three times, and numerous outpatient programs. At one point or other, she has physically attacked every member of our family. Recently, she seems to have become even more violent and is directing most of her fury at my father. My Dad has both a brain tumor and Multiple Systems Atrophy (a Parkinson's disease — like brain degeneration). He is almost totally wheelchair-bound and is increasingly unable to defend himself against her.
 I was on the phone with Dad about an hour before my mother was arrested. I heard her repeatedly attack him physically while he tried, in vain, to keep her from hanging up the phone. (She has cut the cords to most of the phones in the house to keep him from talking to anyone). I also talked to him this morning, after she bailed herself out, and heard her loudly threaten him again while he tried desperately to get her to go to her hearing.[1]
* * *
 I beg you not to let her bail herself out again and return to the house, where she would surely try to hurt my father again. (Although the house is "in trust," she may still be able to use it for collateral to meet a high bail. And I have no doubt that she would be willing to lose the house to avoid jail).
 We three daughters have been trying very hard to convince my Dad to leave my Mom. (He is very, very welcome to live with us in New Rochelle or with my sister in Virginia). In the meantime, please, please don't let her go home drunk and hurt him again.
Docket 5.
Another daughter's fax contains the following:
 My mother, Imogene Christensen, was arrested earlier today after failing to make a court appearance. I am writing this letter to express my opinion that she will continue to fail to make court appearances or follow through on anything else she says she will do, no matter how convincing the manner in which she promises to do it. The cost, in money or otherwise, to herself or others will not be a factor in her decision, so bail is a meaningless term in this case.
 I don't mean to sound cold, but those of us who have been dealing with my parents for years and have tried everything we know to help them, hope that this development will be the turning point that causes them to get the help they so desperately need. Letting my mother pay some more money and go home enraged to her disabled husband is not the answer. Please take this into consideration when deciding whether to allow my mother to post bail.
 I am hoping to convince my father to go elsewhere to stay. He does have other options.
On March 23, 1998, Ms. Christensen moved to reinstate her previous $10,000 bond and at the same time requested a hearing on her motion. The trial court denied the motion the next day without elaboration.
On April 3, 1998 Ms. Christensen filed a motion for reconsideration of her motion to reinstate the $10,000 bond. Counsel for the defendant noted that Ms. Christensen had no recollection of having had an opportunity to address the court on the issue of the bond forfeiture. In an accompanying affidavit, Ms. Christensen stated she was not advised orally or in writing by anyone that she was to appear in Xenia Municipal Court on January 15, 1998 at 8:30 a.m. She also provided the affidavit of a Jim Parks who drove her home in the early morning hours of January 15 who corroborated Ms. Christensen's statement.
Despite the fact that the trial court specifically noted at the arraignment that Ms. Christensen was incoherent and extremely intoxicated, nonetheless the trial court denied the motion to reinstate the bond without affording the defendant a hearing.
Appellant argues the trial court abused its discretion in not remitting the bond because there was little or no delay in the prosecution of her case, little expense involved in securing her appearance, and her failure to appear was not wilful. She also argues there is nothing in the record to support the assertion by the trial court that appellant had been told to be in court the morning of January 15, 1998.
A court is allowed to remit all or any part of a forfeited bail bond "as it deems just." R.C. 2937.39. The decision is discretionary with the court. State v. Patton (1939), 60 Ohio App.3d 99,101. The purpose of bail bond is to insure the appearance of the defendant at all stages of the criminal proceedings, but even when a defendant finally does appear, other factors may be considered by the court, including "the inconvenience and delay of the prosecution, the expense of all, the willfulness of the violation as well as any other mitigating circumstances." Id. In State v. Shumaker (Feb. 18, 1994), Darke App. 1332, unreported, this court upheld the forfeiture of a cash bond of $187 after the defendant failed to appear for trial after three previous last minute trial continuances.
The trial court was undoubtedly influenced by the communications it received from the defendant's daughters. The trial court could have properly considered these communications in imposing an appropriate sentence upon the defendant. The purpose of bail, however, is not punitive, it is to secure the presence of the defendant. Dudley v. United States (5th Cir. 1957),242 F.2d 656.
The inconvenience and delay to the prosecution in this case was minimal. The hearing delayed was an arraignment, not a trial, and so no witnesses or jurors were inconvenienced. The bailiffs arrested the defendant within hours after she failed to appear. There was little expense involved in securing the defendant's presence in court. The defendant's failure to appear may not have been wilful as the citation issued her was incorrect. In any event, she was provided this oral information when she was in an intoxicated state. In light of these facts, the forfeiture of the entire $10,000 was "clearly" excessive under the circumstances of this case, and was an abuse of the court's discretion. The trial court's failure to provide the defendant a hearing on her motion when she was sober and had the assistance of counsel was plain error. Accordingly, the assignment of error is sustained in part and we remand this matter to the trial court to conduct a hearing to determine the appropriate remission of the bond forfeited in this matter. See, United States v. Bass (5th Cir. 1978), 573 F.2d 258.
Judgment of the trial court is Reversed and Remanded for further proceedings.
GRADY, P.J. concurs.
[1] This statement corroborates the court's belief that Christensen was told her hearing would be that morning, even though the citation mistakenly sets the hearing for January 14, the day before the arrest.